EDGAR Z. PELLS *et al.*

*v.*

THE CITY OF PAXTON.

*Opinion filed October 24, 1898—Rehearing denied December 13, 1898.*

1. MUNICIPAL CORPORATIONS—*a material change in a contract after opening the bids requires new advertisement.* A municipal corporation, after opening bids for a public contract which the law requires shall be let to the lowest responsible bidder, has no power to materially change the contract and award it to one of the original bidders without a new advertisement.

2. SPECIAL TAXATION—*a valid ordinance must precede construction of improvement.* A valid ordinance for the construction of an im-

provement by special taxation is the foundation of the proceeding, and all steps taken without such ordinance are absolutely void.

3. SAME—*city's acceptance of unauthorized work imposes no liability on property owners.* Acceptance by a municipal corporation of an improvement constructed without the authority of a valid ordinance does not authorize the levy of a special assessment or special tax to pay for the same.

4. SAME—*effect where part of the work is done after amendment of ordinance.* Where, after opening bids for the construction of a pavement by special taxation, the city changes the contract to call for a pavement of less width and lets it to one of the original bidders without new advertisement, who begins work thereunder before the ordinance is amended to conform to the change, the city cannot pay for the improvement by special taxation or assessment, although part of the work was done after the ordinance was amended.

WRIT OF ERROR to the County Court of Ford county; the Hon. ALEXANDER MCELROY, Judge, presiding.

This is a proceeding in the county court of Ford county to collect a special tax for the pavement of a portion of Market street in the city of Paxton in that county. Upon application for confirmation of the special tax the plaintiffs in error, Edgar Z. Pells, Hannah W. Bogardus, W. A. McCulloch, and Calvin H. Frew, filed objections to said confirmation. The nature of the objections appears from the statements made in the opinion. The objections were overruled by the county court, and judgment was rendered by said court, confirming the special tax against the property of the plaintiffs in error. The present writ of error is prosecuted from such judgment of confirmation.

GRAY & BEACH, and M. H. CLOUD, for plaintiffs in error:

The first step to be taken in making a local improvement to be paid for by special assessment or special taxation is the passage of an ordinance specifying the nature, character, locality and description of the improvement, and the mode in which the cost of the improvement shall

be collected, and no work can be done or expense incurred which can become a charge on the property of the land owner, before such an ordinance is passed by the city council. *Davis* v. *Litchfield,* 155 Ill. 384; *Carlyle* v. *County of Clinton,* 140 id. 512; *East St. Louis* v. *Albrecht,* 150 id. 506.

A special assessment cannot be levied to pay for a part of the improvement required by an ordinance, nor can a special assessment be levied to pay for the whole after a part has been abandoned. *St. John* v. *East St. Louis,* 136 Ill. 214.

The city officers have no authority, after the bids have been opened, to alter the contract materially, and then award it to one of the original bidders without a new advertisement. 15 Am. & Eng. Ency. of Law, 1093.

The party dealing with a municipal body is bound to see to it that all the mandatory provisions of the law are complied with, and if he neglects such precaution he becomes a mere volunteer and must suffer the consequences. 15 Am. & Eng. Ency. of Law, 1086, 1087.

CALVIN H. FREW, *pro se.*

M. L. McQUISTON, City Attorney, and A. E. DeMANGE, for defendant in error:

The city has the right to change the details of the construction, and the acceptance of the improvement by the city, in the absence of fraud, is conclusive that it was constructed substantially in accordance with the requirements of the ordinance. *Ricketts* v. *Hyde Park,* 85 Ill. 112; *Cram* v. *Chicago,* 138 id. 507.

The ordinance in existence when the work was done is the basis of the re-assessment, and even when the original ordinance proves defective, if it was not absolutely void it may be amended by a supplemental ordinance and a re-assessment made on the basis of the original and supplemental ordinances. *East St. Louis* v. *Albrecht,* 150 Ill. 512.

The appointment of the committee to make the estimate of cost was by resolution. The statute does not require that such committee shall be appointed by ordinance. In the absence of such requirement it may be done either by resolution or ordinance. *Green* v. *Cape May*, 41 N. J. L. 45; *State* v. *Jersey*, 27 id. 493.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question of the validity of a former proceeding in reference to the same improvement involved in the present suit was before this court at a former term; and the decision of this court in relation thereto is reported in the case of *Pells* v. *People*, 159 Ill. 580. By reference to that case it will be seen, that an ordinance was passed by the city council of Paxton on March 13, 1893, amended on April 10, 1893, and again on May 10, 1893, for the construction of a brick pavement sixty-one feet wide along a portion of Market street in the city of Paxton. The judgment and order of sale entered by the county court, and reviewed in *Pells* v. *People*, *supra*, were there reversed upon the ground that the property owners were assessed for making a larger improvement than was contracted for by the city, and for a larger improvement than was actually constructed. It was shown by the proceedings and evidence in that case, that, although the property owners were specially taxed for a pavement sixty-one feet wide, the pavement, which the contractors agreed to construct, was only fifty-three feet wide.

It will also appear by reference to the case of *Pells* v. *People, supra*, that, after a contract was made for the construction of a pavement fifty-three feet wide, to-wit, on September 16, 1893, an ordinance was passed, amending the original ordinance of March 13, 1893, by providing, that the width of the pavement should only be fifty-three feet between curbings, except within the intersection of cross-streets. After the former judgment was reversed

by this court, the city council of Paxton, on September 3, 1896, adopted the following resolution, to-wit:

"WHEREAS, in the suit of Edgar Z. Pells and Hannah W. Bogardus *v.* The People *ex rel.* Oscar V. Hohngrain, county collector, the Supreme Court of Illinois in an opinion filed on the 17th day of January, 1896, reversed the judgment of the county court of Ford county ordering the sale of certain tracts of real estate specially taxed for the construction of the brick pavement on Market street under an ordinance of this city passed March 13, 1893, amended April 10, 1893, amended May 10, 1893, amended September 16, 1893; and whereas the effect of such judgment of reversal by the Supreme Court is the annullment of the confirmation by the county court of Ford county of all the special taxes assessed for the construction of said pavement; and whereas the pavement described in said ordinance and its various amendments has been constructed by the contractor in accordance with the terms and provisions of his written contract with the city of Paxton; and whereas the city of Paxton has accepted said pavement, described in said ordinance and its amendments, and paid for the construction of all that part thereof lying within the limits of intersecting streets; and whereas Edgar Z. Pells and Hannah W. Bogardus, owners of numerous tracts of real estate abutting upon the line of said improvement, have paid none of the special taxes assessed and confirmed by the county court against said tracts of real estate; and whereas the owners of other tracts of real estate abutting upon said improvement have paid all or a part of the installments of the special taxes assessed upon their said tracts of real estate; therefore,

"*Be it resolved by this council,* that all special taxes, assessed for the construction of said improvement under the ordinance and its said several amendments herein above mentioned, be and the same are hereby annulled.

"*Resolved further,* that C. H. Yeomans, J. W. Reed and J. H. Nelson, be, and they are hereby, appointed to make an estimate of the cost of said improvement provided for and described in said above mentioned ordinance and its several amendments, including labor, materials and all other expenses attending the same, and the cost of making and levying the special taxes to pay therefor; except for that portion of said improvement lying within the limits of cross-streets intersecting said Market street, described in said original ordinance and its said amendments, and report the same to the next meeting of this council."

Afterwards, on December 7, 1896, the above resolution was amended so as to recite an omitted amendment of the original ordinance, made October 4, 1893.

On December 7, 1896, the committee, appointed to make an estimate of the cost of the construction of said pavement, etc., made report of their estimate to the city council, which report was approved on the same day, to-wit, December 7, 1896. On said last named date, the city council passed a resolution, instructing the city attorney to file a petition in the county court for the appointment of commissioners to make an assessment based upon the estimate so reported. The petition herein was so filed on December 8, 1896, and commissioners were appointed who filed an assessment roll on December 23, 1896. The objections, filed by the plaintiffs in error to such assessment roll, were overruled.

It is evident from the above recital, that the present proceeding has for its object the levy and collection of a special tax to pay for an improvement already constructed before the resolution, above recited, was passed. It is claimed by the defendant in error, that the pavement fifty-three feet wide was constructed under and in pursuance of the amendment of September 16, 1893, to the original ordinance of March 13, 1893. The amendment of September 16, 1893, having provided for a pavement fifty-three feet wide instead of the pavement sixty-one feet wide described in the ordinance of March 13, 1893, the resolution of September 3, 1896, was passed for the purpose of having an estimate made of the cost of constructing such pavement fifty-three feet wide. It is urged, that the resolution thus cures the defect in the original proceeding, which required an estimate to be made of the cost of constructing a pavement sixty-one feet wide, when a pavement only fifty-three feet wide was actually constructed.

A fatal objection exists to the validity of the resolution of September 3, 1896, and to all the proceedings

based thereupon. This court has decided over and over again, that a valid ordinance lies at the foundation of the proceeding to construct a public improvement by special assessment or special taxation; that the first step to be taken in making such an improvement is the passage of an ordinance specifying its nature, character, locality and description; and that the improvement can not be paid for by special taxation or special assessment, unless an ordinance has been passed which authorizes it. (*Pells* v. *People, supra,* and cases there referred to).

In the present case, the city council of Paxton passed an ordinance on March 13, 1893, providing for a pavement sixty-one feet wide, and appointed a committee to estimate its cost, and approved a report of said committee, and ordered a petition to be filed in the county court for the making of an assessment based upon such report. It confirmed an assessment roll, providing for the levying of a special tax to make a pavement sixty-one feet wide. On July 13, 1893, it advertised for bids for the construction of a pavement sixty-one feet wide, as directed by the original ordinance of March 13, 1893. Two bids were made for the construction of the pavement sixty-one feet wide, one by one Mayfield, and the other by one Barnes. The advertisement for these bids required that each bid should be accompanied by a bond in the sum of $5000.00 with sufficient sureties that the bidder would furnish the material, and perform the work, as provided by the ordinance of March 13, 1893, on or before October 13, 1893. By the terms of the advertisement all bids were to be delivered to the chairman of the committee on streets and alleys on or before August 7, 1893.

Although, as we read the evidence, the bid made by Mayfield was lower than the bid made by Barnes, and although Mayfield's bid was accompanied by a bond for $5000.00, and the bid of Barnes was not accompanied by any bond, yet, on August 15, 1893, a committee of the city council was instructed to contract with Barnes in

accordance with his bid. No contract, however, was made with him in accordance with his bid. On the contrary, on August 21, 1893, a contract was entered into between Barnes and the city of Paxton, which recites the passing of the ordinance of March 13, 1893, and the amendments thereto of April 10 and May 10, 1893; and also recites the awarding of the contract by resolution of the city council to Barnes at certain figures, the work to be done, "as modified by a certain contract, of the width of fifty-three feet instead of sixty-one feet as required by the ordinance;" and which also recites, that the contract of August 21, 1893, was signed by a majority of the property owners abutting on said improvement, and the signatures of the balance of said property owners was to be secured by the city, if possible, and if not, then the city should protect Barnes against any loss by reason of refusal on the part of said parties to sign said agreement. By the terms of said agreement, Barnes was to begin the work on or before September 1, 1893, and complete it on or before December 1, 1893, instead of October 30, 1893, as stated in the advertisement for bids.

The resolution of September 3, 1896, recites that the pavement "has been constructed by the contractor in accordance with the terms and provisions of his written contract with the city of Paxton." If the pavement was constructed in accordance with the terms of the contract of August 21, 1893, then its construction began on September 1, 1893. As the ordinance, changing the width of the pavement from sixty-one feet to fifty-three feet, was not passed until September 16, 1893, the contract for constructing a pavement fifty-three feet wide was entered into twenty-six days before any ordinance was passed authorizing the construction of a pavement fifty-three feet wide; and such construction was actually begun some fifteen days before the passage of any ordinance, providing for the construction of a pavement fifty-three feet wide. The facts thus stated bring the case within

the doctrine of this court laid down in the case of *City of Carlyle* v. *County of Clinton*, 140 Ill. 512, and *City of East St. Louis* v. *Albrecht*, 150 id. 506. A city council has no right to make an improvement, and then, after the improvement is made, pass an ordinance providing for the making of the improvement. The passage of the ordinance must precede the making of the improvement, and the making of the improvement and all steps thereafter are absolutely void, unless preceded by a valid ordinance. It is true, that much of the work done by the contractor, Barnes, in constructing the pavement fifty-three feet wide, may have been done after the amendment of September 16, 1893, was passed; but he did not construct such pavement by virtue of and under the amended ordinance of September 16, 1893. He constructed the improvement under and by virtue of the contract made with the city on August 21, 1893. That contract was wholly illegal. It was not made in pursuance of an advertisement for bids made as required by statute. Section 50 of article 9 of the City and Village act provides, that "all contracts for the making of any public improvement, to be paid for in whole or in part by a special assessment, and any work or other public improvement, when the expense thereof shall exceed $500.00, shall be let to the lowest responsible bidder, in the manner to be prescribed by ordinance—such contracts to be approved by the mayor or president of the board of trustees." (1 Starr & Curt. Ann. Stat. p. 505). The work done by Barnes in the construction of the pavement fifty-three feet wide exceeded $500.00 in cost, but it was not let to the lowest responsible bidder. Barnes put in no bid for the construction of a pavement fifty-three feet wide. The contract with Barnes was not let in the manner prescribed by ordinance, because there was no ordinance prescribing the manner of letting the contract to construct a pavement fifty-three feet wide. The ordinance of March 13, 1893, contained a provision for advertising for bids for

the construction of a pavement sixty-one feet wide only, and not fifty-three feet wide.

The fact, that some of the work may have been done after the amendment of September 16, 1893, was passed, does not relieve the transaction of the objectionable feature, that no ordinance, authorizing a pavement fifty-three feet wide, had been passed when the contract was entered into on August 21, 1893, and when the making of the improvement was begun on September 1, 1893. If the law forbids the making of the entire improvement without the precedent passage of an ordinance, it equally forbids the construction of a part of the improvement without the passage of a precedent ordinance. Municipalitie's and contractors cannot get together and contract for the making of an improvement and commence the making of it, and then afterwards, in order to justify their illegal conduct, procure from a city council the passage of an ordinance under which such illegal conduct is sought to be justified. "The city officers have no authority, after the bids have been opened, to alter the contract materially, and then award it to one of the original bidders without a new advertisement." (15 Am. & Eng. Ency. of Law, p. 1093). This is exactly what the city officers of Paxton did in the present case. After the bids for the construction of a pavement sixty-one feet wide were opened, they made a contract with Barnes to construct a pavement fifty-three feet wide without a new advertisement, Barnes being one of the original bidders.

The precise question here involved was presented in *City of East St. Louis* v. *Albrecht, supra.* We there said (p. 510): "The question presented, then, is, can a city council, under our statute authorizing the making of local improvements by special assessment or special taxation, by accepting and adopting improvements made without being authorized by ordinance, compel property owners to pay for them." In answering this question the court quotes from *City of Carlyle* v. *County of Clinton,*

*supra*, and says: "That case is decisive of this. Here, as there, an ordinance is passed, not to make an improvement, but to pay for one already made. One of the controlling reasons for requiring an ordinance to be passed prior to making the improvement is, that from the nature, character, locality and description of the same, which the statute requires every such ordinance to specify, an intelligent estimate of the cost of the material, labor, etc., may be made, both as a protection to owners of property and as a restraint upon the municipal authorities." In the *Albrecht case* the court affirmed a judgment of the county court refusing to confirm the assessment in that case, upon the ground that the improvement, for the payment of which it was made, was never authorized by ordinance. The subsequent or amendatory ordinance in the *Albrecht case* contained a similar provision to that contained in the resolution of September 3, 1896, in this case, to the effect that the local improvement in question had been constructed and its completion was adopted, accepted and ratified by the city. It is there further said: "To say that the city adopted and accepted the work or ratified what had been done, was an idle ceremony, and amounted to no more than approving its own act."

In several cases this court has held that, when an originally valid ordinance had been passed but an assessment made under it had been set aside because of some defect in the mode of making the assessment, a new assessment might be made under the original ordinance to pay for the improvement already constructed. These cases proceed upon the idea, that the ordinance existed when the work was done, although a part or section of the ordinance may have been invalid as to the mode prescribed for levying or collecting the assessment. In such case, the valid portion of the original ordinance may be the basis of the re-assessment. (*Davis* v. *City of Litchfield*, 155 Ill. 384; *Freeport Street Railway Co.* v. *City of Freeport*, 151 id. 451; *Village of Morgan Park* v. *Gahan*, 136 id. 515).

Thus in *Freeport Street Railway Co.* v. *City of Freeport, supra,* it was said "that when it becomes necessary to make a re-assessment, not because of any irregularity in the passage of the ordinance, or because it fails to sufficiently describe the improvement, but solely because in a distinct section it attempts to levy the assessment in an illegal mode, we see no reason why the valid portions of the ordinance may not be treated as still in force and made the basis of a proceeding for a new levy." In the case at bar, the re-assessment is not made because an attempt was made to levy the original assessment in an illegal mode. Here, the original ordinance failed to sufficiently describe the improvement, as it described the pavement to be sixty-one feet wide instead of a pavement fifty-three feet wide.

It is contended by counsel for plaintiffs in error, that the action taken by the city council on September 3, 1896, appointing a committee to estimate the cost of the improvement, was invalid because it was in the form of a resolution not signed by the mayor, instead of being in the form of an ordinance passed in the regular way. We do not deem it necessary to discuss the question, whether the common council had the power to appoint the committee to make the estimate by a resolution, or whether it was necessary for them to make such appointment by ordinance, and we pass no opinion upon this question. It is sufficient to say, that the proceedings beginning with September 3, 1896, are invalid, because the contract with Barnes was made and the construction of the pavement was begun without any precedent action by the common council, either in the form of an ordinance or of a resolution.

For the reasons above stated, the judgment of the county court is reversed and the cause is remanded to that court for further proceedings in accordance with the views here expressed.     *Reversed and remanded.*